Filed 8/19/15  P. v. Lewis CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>BRIAN DEVERICK LEWIS,<br><br>Defendant and Appellant. | D066330<br><br><br>(Super. Ct. No. SCS263363) |

APPEAL from a judgment of the Superior Court of San Diego County, Stephanie Sontag, Judge.  Affirmed.

Thomas Jefferson School of Law and Alex D. Kreit, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Eric A. Swenson, and Allison V. Hawley, Deputy Attorneys General, for Plaintiff and Respondent.

# I.

## INTRODUCTION

Defendant Brian Deverick Lewis appeals from his conviction on one count of possessing a controlled substance while in prison. Lewis contends that the trial court erred and violated his right to due process in not permitting him to present the defense of necessity. Lewis, who was found guilty of possessing marijuana, argues that he was entitled to present a necessity defense, since he proffered evidence that "his nearly two-year effort to obtain adequate pain medication from the prison had proven futile, leaving him no reasonable alternative to possessing unauthorized medication."

We conclude that Lewis's proffer regarding the defense of necessity was insufficient to demonstrate that he was entitled to present such a defense. We therefore conclude that the trial court did not violate Lewis's right to due process in not permitting Lewis to present a necessity defense, and we affirm the judgment.

# II.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 22, 2012, Lewis, an inmate at Richard J. Donovan Correctional Facility, was found smoking marijuana in his cell. The correctional officer who smelled marijuana approached Lewis's cell, saw him holding two marijuana cigarettes, and, after searching Lewis's person, found 13 bindles, totaling 12.17 grams, of marijuana.

2

The San Diego County District Attorney filed an information alleging that Lewis possessed a controlled substance while in prison (Pen. Code, § 4573.6).[1] The information also alleged that Lewis had been previously convicted of four serious or violent felonies, within the meaning of sections 667, subdivisions (b) through (i), 1170.12, and 668.

A jury convicted Lewis of possessing a controlled substance while in prison. Lewis admitted to having suffered a prior strike conviction. The trial court sentenced Lewis to two years in prison. Lewis filed a timely notice of appeal.

III.

DISCUSSION

Lewis contends that the trial court violated his due process rights "by barring his necessity defense where [he] presented substantial evidence that his nearly two-year effort to obtain adequate pain medication from the prison had proven futile, leaving him no reasonable alternative to possessing unauthorized medication."

A.    *Additional background*

Prior to trial, Lewis filed a motion seeking to be permitted to present the common law defense of necessity. Lewis argued that he suffered from chronic pain, and that because prison personnel had failed to adequately address his medical needs, it had become necessary for him to use marijuana to treat his severe and constant pain.

---

[1]    Further statutory references are to the Penal Code unless otherwise indicated.

3

Lewis recounted that he had filed administrative medical complaints and appeals concerning his medical care on more than 10 occasions. Lewis first filed an administrative request in November 2010, while he was incarcerated at Folsom State Prison. In that request, Lewis noted that he had been waiting for 60 days to see a doctor and was in pain. On December 8, 2010, Lewis saw a doctor who prescribed a two-week regimen of Tylenol for Lewis's pain and noted that Lewis should "have a follow up thereafter." That doctor also advised Lewis to do some neck and back exercises.

Lewis submitted four additional requests for medical treatment for back pain in January, March, and June 2011. In March, Lewis was given morphine. In June, Lewis requested morphine. On or around June 21, he was told that he would be seeing a doctor in a week. When Lewis had not seen a doctor by July 1, he filed an administrative appeal, requesting that his "back and neck pain be addressed and that [he] be allowed to speak to a doctor."

Lewis filed an additional medical treatment request on August 5, 2011. Lewis consulted with a nurse who issued a "referral to MD." At that time, Lewis had reported "acute/chronic pain" at nine on a scale of one through 10. Lewis was being given naproxen at that time. The notes also state that Lewis "will refile if [his back] worsens in [the] meantime."

The next medical treatment request that Lewis filed was on November 14, 2011. He was seen by a nurse within two days of this request.

4

On February 14, 2012, Lewis filed a "Patient/Inmate Health Care Appeal." On the form, Lewis stated that he had been "in extreme back pain" for the past two months, and that his "medication does not work and has expired." He complained that he had waited six weeks to see a doctor, and that his last three medical appointments had been cancelled.

Lewis filed a "third 602 [appeal]" seeking to see a doctor on May 17, 2012. He said that he had been prescribed ibuprofen, and that it had not alleviated his back and neck pain. On May 29, 2012, Lewis sent a letter to the Healthcare Appeals Coordinator regarding a "[d]enial of right to file appeal." Lewis complained that his "medications have expired" and sought further treatment. Lewis was seen on May 31, 2012 by Dr. Paul Gallagher. Dr. Gallagher noted that "unfortunately, recommendations by Dr. Griffin [on March 5, 2012] have never been followed through on." Those recommendations had included that Lewis undergo an MRI of his cervical spine. Dr. Gallagher requested an "Orthopedics evaluation of carpal tunnel and ulnar neuropathy and an MRI of the patient's neck." With respect to Lewis's medications, Dr. Gallagher noted that "Med reconciliation reviewed with patient" and made no changes to Lewis's medications. Dr. Gallagher's notes do not indicate that Lewis was seeking or required a change in medications.

Apparently, as of July 12, 2012, Lewis had not undergone an MRI. He filed a "Patient/Inmate Appeal" form on that date indicating that he had been informed that the

5

MRI request had been denied. The form indicates that this appeal was "Cancelled" on August 7, 2012.

On September 14, 2012, Lewis was transferred to the Richard J. Donovan Correctional Facility. Lewis was "designated to be housed in a Lower Bunk/Lower Tier cell." However, because there were "no cells available" to accommodate his needs, he was placed in the Administrative Segregation Unit. In papers filed in the trial court, Lewis asserted that while in the Administrative Segregation Unit, he was denied "his medical appliances which included a back and wrist brace."

Lewis filed a petition for a writ of habeas corpus on October 16, 2012, regarding his placement in the Administrative Segregation Unit. The petition was denied by the trial court due to Lewis's failure to include a copy of his administrative appeal in support of the petition.

Sometime between October 16 and October 22 (the date Lewis was found in possession of marijuana), he was placed in the general population.

In support of his motion to be permitted to present the defense of necessity, Lewis's attorney proffered the testimony of a pain management expert, Dr. David Bearman, who was prepared to testify regarding the efficacy of marijuana for medical purposes, and to the fact that "he would have prescribed marijuana to treat Mr. Lewis' condition."

After hearing argument from both parties concerning Lewis's offer of proof regarding the defense of necessity, the trial court ruled that Lewis would not be permitted

6

to present that defense. The trial court determined that Lewis's offer of proof on the common law medical necessity defense was insufficient to permit the evidence pertinent to it to go to the jury. The trial court concluded, "I think the legal alternatives were not exhausted, because it appear[s] that the appeals were responded to in most respects." The trial court also concluded, "I don't think that it even rises to the level to bring to a jury, because the emergency basis is not reached."

B.      *Analysis*

California generally recognizes a common law necessity defense when a defendant is charged with committing any criminal act except the taking of an innocent person's life. (*People v. Slack* (1989) 210 Cal.App.3d 937, 940 (*Slack*).) An individual claiming the common law defense of necessity must establish six required elements: "1. The act charged as criminal must have been done to prevent a significant evil; [¶] 2. There must have been no adequate [legal] alternative to the commission of the act; [¶] 3. The harm caused by the act must not be disproportionate to the harm avoided; [¶] 4. The accused must entertain a good-faith belief that his act was necessary to prevent the greater harm; [¶] 5. Such belief must be objectively reasonable under all the circumstances; and [¶] 6. The accused must not have substantially contributed to the creation of the emergency." (*People v. Pena* (1983) 149 Cal.App.3d Supp. 14, 25-26, fns. omitted; see also CALCRIM No. 3403.)

"The standard for evaluating the sufficiency of the evidentiary foundation is whether a reasonable jury, accepting all the evidence as true, could find the defendant's

7

actions justified by necessity."  (*People v. Trippet* (1997) 56 Cal.App.4th 1532, 1539 (*Trippet*), citing *Slack*, *supra*, 210 Cal.App.3d at p. 941.)  "The court in *Slack* noted that satisfying the required foundational burden through an offer of proof rather than on the witness stand makes no difference to the standard of review on appeal, which is 'whether there is evidence deserving of consideration from which reasonable jurors could conclude the *Pena* elements have been satisfied.' "  (*Trippet*, *supra*, at p. 1539.)

We need not analyze all six elements of the common law necessity defense in this case because we conclude, as a matter of law, that Lewis failed to demonstrate that he could establish that he had no adequate legal alternative to possessing marijuana.[2]

"Under any definition of the[] defenses [of duress and necessity] one principle remains constant: if there was a reasonable, legal alternative to violating the law, 'a chance both to refuse to do the criminal act and also to avoid the threatened harm,' the defenses will fail."  (*United States v. Bailey* (1980) 444 U.S. 394, 410 (*Bailey*).)  Thus, if a defendant had legal alternatives to prevent or avoid the alleged "significant harm," he or she is not entitled to a necessity defense.

Lewis offered evidence that he had complained about his pain to prison personnel on a number of occasions, that he had received morphine, and that he was not satisfied

---

[2]    Because we conclude that Lewis failed to proffer sufficient evidence to demonstrate his ability to establish a necessity defense, we need not address the People's contention that a necessity defense is unavailable to Lewis as a result of the Compassionate Use Act of 1996's limitations regarding the necessity defense (see Health & Saf. Code, § 11362.5; see also *People v.Galambos* (2002) 104 Cal.App.4th 1147, 1159 [holding that the "limited immunity afforded under" the Compassionate Use Act of 1996 "is incompatible with a common law defense of medical necessity"]).

with the pain relief provided by morphine or ibuprofen. He had not tried other medications, however, and he did not present evidence that alternative, effective legal pain medications did not exist, or that he had sought out and tried alternative pain medications and those medications were ineffective. An individual "cannot claim to have no reasonable alternative to smoking marijuana when a legal medication is available and known to both [him or] her and [his or] her doctor." (*Trippet*, *supra*, 56 Cal.App.4th at p. 1539, citing *Bailey*, *supra*, 444 U.S. at p. 410, and *People v. Patrick* (1981) 126 Cal.App.3d 952, 960.) Lewis did not present evidence that there existed no other legal medications available to him that could have addressed his pain and that marijuana was his *only* option for pain management. In fact, his complaints often refer to his requests for more or different medications to alleviate his symptoms.

Lewis contends, however, that even if there might exist legal medications that could have alleviated his pain, as a result of his incarceration he is in a unique position; according to Lewis, he does not have the ability to "go to a different doctor or try a different prescription," which, he maintains, effectively meant that he had no legal medical alternatives available to him. Lewis asserts that "going through the prison health care system was no longer a reasonable legal alternative" and that "the only other available alternative would be for [him] to possess an unauthorized drug." Lewis acknowledges that "alternative pain medications and treatments *existed* and that Lewis did not 'try' them," but contends, "what this argument misses is that for nearly two years, the prisons inexplicably refused to make alternative medications *available* for Lewis to

9

try, despite his repeated requests for effective treatment."  Thus, Lewis's medical necessity argument is not simply that he needed marijuana to address his pain, but that because he was unable to obtain adequate pain relief through the prison health care system, he was therefore essentially "forced" to use marijuana to address his pain.

Although we acknowledge that Lewis's position as a confined prisoner complicates the issue of the availability and/or convenience of medical care that could address his chronic pain, we disagree with Lewis's contention that his status as a prisoner left him with no legally permissible alternatives for obtaining adequate pain management. Although the record discloses that Lewis made a number of initial requests for pain treatment, Lewis has not pointed to any portion of the record demonstrating that he pursued appeals of any of the medical decisions past a second level review.  Further, he did not file a petition for habeas corpus challenging his medical care, or a civil lawsuit seeking a different or more effective treatment.  Lewis has made no showing that he could not have obtained effective pain relief from his chronic pain through one of these *legal* methods of addressing his concerns about the inadequacy of his medical treatments by medical staff.  Therefore, as a matter of law, no reasonable jury could conclude that Lewis's illegal possession of marijuana was the *sole* remedy available to him to address the alleged failure of medical staff to assist him with his chronic pain.

10

IV.

DISPOSITION

The judgment of conviction is affirmed.


                                                                    AARON, J.

WE CONCUR:


HALLER, Acting P. J.


IRION, J.